Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000409
29-JUN-2018
12:32 PM

NOS. CAAP-15-0000409, CAAP-15-0000414,
CAAP-15-0000576, CAAP-15-0000598, and CAAP-15-0000632

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

CAAP-15-0000409
In the Matter of the Trust Agreement
dated June 6, 1974, as amended

and

CAAP-15-0000414
In the Matter of the Trust Agreement
dated June 6, 1974, as amended

and

CAAP-15-0000576
In the Matter of the Trust Agreement
dated June 6, 1974, as amended

and

CAAP-15-0000598
In the Matter of the Trust Agreement
dated June 6, 1974, as amended

and

CAAP-15-0000632
In the Matter of the Trust Agreement
dated June 6, 1974, as amended

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(TRUST NOS. 14-1-0019 and 14-1-0097)

MEMORANDUM OPINION
(Fujise, Presiding Judge, Reifurth, J., and
Circuit Court Judge Crabtree, in place of
Ginoza, C.J., Leonard and Chan, JJ., recused.)

On appeal are five consolidated cases, CAAP-15-0000409, CAAP-15-0000414, CAAP-15-0000576, CAAP-15-0000598, and CAAP-15-0000632, arising out of the same matter in the Circuit Court of the First Circuit (Probate Court).[1][2]

In CAAP-15-0000409, Petitioner-Appellant Association of Apartment Owners of Discovery Bay (AOAO) appeals from the "Second Order Granting in Part and Continuing in Part Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008 Through December 31, 2013" (Trustee Fee Order) and corresponding "Judgment" (Trustee Fee Judgment) both entered on April 17, 2015.

In CAAP-15-0000414, Michael David Bruser and Lynn Bruser (collectively, Brusers) appeal from the "Order Denying Interested Parties Michael David Bruser and Lynn Bruser, Trustees Under Revocable Living Trust Agreement Dated July 11, 1988, as Amended, Doing Business As Discovery Bay Center's Petition Under [Hawai'i Probate Rules (HPR)] Rule 36 for Relief From Order and Reconsideration of Interim Order Relating to Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008 Through December 31, 2013" (Order Denying Brusers' Motion for Reconsideration), corresponding "Judgment" (Judgment Denying Brusers' Motion for

---

[1]    The Honorable Derrick H.M. Chan presided.

[2]    On September 30, 2015, this court issued its "Order Consolidating Appellate Court case Numbers CAAP-15-0000409, CAAP-15-0000414, CAAP-15-0000576, CAAP-15-0000598, and CAAP-15-0000632 under Appellate Court Case Number CAAP-15-0000632."

Reconsideration), the Trustee Fee Order, and the Trustee Fee Judgment, all entered on April 17, 2015.

In CAAP-15-0000576, the AOAO appeals from the "Order Granting Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008 Through December 31, 2013 as to All Pending Issues" (Trust Amendment Order) and corresponding "Judgment," (Trust Amendment Judgment) both entered on July 13, 2015.

In CAAP-15-0000632, the AOAO appeals from the "Order Granting Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008 Through December 31, 2013 as to Last Pending Issue Regarding Attorneys' Fees and Costs" (Attorneys' Fees and Costs Order) and accompanying "Judgment" (Attorneys' Fees and Costs Judgment) both entered on August 13, 2015. The AOAO also appeals, via an Amended Notice of Appeal, from the "Order Denying Respondent Association of Apartment Owners of Discovery Bay's Petition for Reconsideration of the Court's April 30, 2015 Decision With Respect to Modification of the June 6, 1974 Trust Agreement Filed June 10, 2015" (Order Denying AOAO's Motion for Reconsideration) and corresponding "Judgment" (Judgment Denying AOAO's Motion for Reconsideration) both entered on September 22, 2015.

In CAAP-15-0000598, the Brusers also appeal from the Attorneys' Fees and Costs Order and Attorneys' Fees and Costs Judgment.

On appeal, the AOAO argues that the Probate Court erred by (1) failing to deny Bank of Hawaii's (BOH) Original Petition and instead continuing the matter; (2) modifying a land trust in violation of contract principles, or, in the alternative, modifying a traditional trust indenture without unanimous consent of the trust beneficiaries and without emergency circumstances; (3) issuing the Trustee's Fee Order, Trust Amendment Order, and Attorneys' Fees and Costs Order without substantial evidence in

3

the record; (4) modifying the Trust Agreement to provide an unreasonable increase in trustee's fees without unanimous consent of the Trust beneficiaries; (5) awarding BOH attorneys' fees, and (6) denying the AOAO's Motion for Reconsideration, which compounded the errors in earlier orders.

On appeal, the Brusers argue that the Probate Court erred by (1) exercising jurisdiction over the trustee fee "reasonable amount" issue; (2) holding the Brusers liable for increased trustee fees despite fraud; (3) failing to correctly interpret the plain meaning of contractual language in their commercial Condominium Conveyance Document (CCD); (4) refusing to permit discovery regarding the reasonableness of the trustee fee; and (5) awarding attorneys' fees and costs to BOH.

For the reasons discussed below, we (1) affirm the (a) Trustee Fee Order in part, (b) Trustee Fee Judgment, (c) Order Denying Brusers' Motion for Reconsideration, (d) Judgment Denying Brusers' Motion for Reconsideration, (e) Order Denying AOAO's Motion for Reconsideration, and (f) Judgment Denying AOAO's Motion for Reconsideration; (2) vacate the (a) Trust Amendment Order and (b) Trust Amendment Judgment; and (3) vacate and remand the (a) Attorneys' Fees and Costs Order and (b) Attorneys' Fees and Costs Judgment for further findings consistent with this opinion.

I. Background

A. Formation of the Trust Agreement

BOH, as successor by merger with Hawaiian Trust Company, Limited (HTC), is the trustee under the Trust Agreement dated June 6, 1974, as amended,[3] executed by the Original

---

[3] The original Trust Agreement has undergone three revisions, resulting in the First (November 27, 1974), Second (November 27, 1974), and Third (December 15, 1976), Amended Trust Agreements. References to the Trust Agreement refer to the original version, unless otherwise specified (i.e. "Trust Agreement (Third)").

Settlors[4] and HTC, as trustee. In the Trust Agreement, the Original Settlors conveyed title to the leased fee interest in their respective lots to HTC, which enabled MEPC to build the Discovery Bay condominium project (Discovery Bay) on these lots. The Trust Agreement therefore governs the development of Discovery Bay and the management of the trust estate, including the leased fee interest and distribution of trust income to the Original Settlors' beneficiaries.

B.    Relevant Trust Agreement Provisions

The stated purposes of the Trust Agreement (Third) are as follows:

> 1. Purpose of Trust. At the special request of Lessee, for convenience only, and for no other consideration, Settlors have established this trust and created the trust estate to facilitate the accomplishment, with their approval hereafter to be obtained, of the following purposes:
>
> (a)    The submission of the project site and the improvements to be constructed thereon to a single horizontal property regime.
>
> (b)    The construction of one or more buildings by Lessee across the existing common boundaries of the project site.
>
> (c)    The efficient and uniform administration of the Settlors' separate interests in the trust estate and in the condominium conveyance documents relating to the apartments of the horizontal property regime.
>
> (d)    The determination of valuation through an appraiser or appraisers under the existing leases and the condominium conveyance documents to be hereafter issued.
>
> (e)    The distribution of rents received by Settlors under the existing leases and the condominium conveyance documents to be hereafter issued.
>
> (f)    The administration of the project upon expiration or earlier termination of the leasehold interest created under said condominium conveyance documents.

---

[4]    The six original settlor groups under the Trust Agreement included five individuals and their families and Mainline-MEPC Properties (Hawaii), Inc. (MEPC). Together, the Original Settlors and MEPC owned thirteen contiguous lots in Waikiki. Under the terms of the Trust Agreement, MEPC is the Lessee. The ground leases held by MEPC were cancelled when the CCDs for the Discovery Bay Condominium were issued in December 1976, pursuant to amendments by the Trust Agreement (Third).

Paragraph 2 of the Trust Agreement (Third), titled "Powers and Duties of Trustee" specifies that the powers of the trustee "shall be limited to the powers hereinafter expressly provided, and such other incidental powers as are reasonably necessary to accomplish the purposes of the trust." These powers include collecting rents pursuant to the CCDs, filing tax returns and other reports as required by law, and collecting and distributing the income of the trust estate for the Settlors. The trustee's power is limited to "administrative and ministerial duties only" and the trustee is "neither intended or permitted to exercise discretion or judgment in determining whether to take or omit to take any action" without direction of the Settlors.

Paragraph 3 of the Trust Agreement (Third), titled "Management of Trust Estate" specifies, *inter alia*, that "it is the intent of the parties hereto that the management and all decisions concerning the disposition of the fee simple reversionary interest in the trust estate shall remain with the Settlors."

Paragraph 4 of the Trust Agreement (Third), titled "Distribution of Trust Net Income" provides, *inter alia*, that the trustee shall distribute the net income generated by the rental income of the property on a quarterly basis to the Settlors or their respective heirs, administrators, executors, and assigns.

Paragraph 5 of the Trust Agreement (Third), titled "Rental Renegotiation" provides that for rental redeterminations pursuant to the CCDs, the trustee shall negotiate with the apartment owner but "shall not agree to the rents for any new rental period without the prior written consent of all the Settlors." If an agreement cannot be reached either between Settlors or between the trustee and apartment owner, the rental shall be determined by appraisal, and appraiser shall be designated by the largest landowner by square footage amongst the Settlors.

Paragraph 11 of the Trust Agreement, titled "Trustee's Fees" provides:

11. <u>Trustee's Fees.</u> The Trustee shall be entitled to such reasonable fees as from time to time may be mutually agreed upon. In addition to said reasonable fees, the Trustee shall have the right to incur such expenses and to be reimbursed by the Lessee[5] as provided for by the leases; and to incur such expenses and be reimbursed for extraordinary services. The Lessee or its assigns will pay the Trustee's fee and expenses until December 31, 2039 or the earlier termination of this trust.

Paragraph 17 of the Trust Agreement, titled "Resignation, Removal and Substitution of Trustee" provides, in relevant part:

(a) <u>Resignation of Trustee.</u> The Trustee may resign its duties hereunder by filing with each person designated as a representative its written resignation. No such resignation shall take effect until sixty (60) days from the date thereof unless prior thereto a successor Trustee shall have been appointed.

. . . .

(c) <u>Appointment of Successor Trustee.</u> A successor Trustee hereunder may be appointed hereunder upon the majority vote of representatives of Settlors having an interest in the majority in square footage in the jointly developed parcel[.] . . .

Any successor Trustee shall be a corporation authorized and empowered to exercise trust powers within the State of Hawai'i. . . .

If within sixty (60) days after notice of resignation shall have been given under the provisions of this paragraph a successor Trustee shall not have been appointed, the resigning Trustee or any Settlor may apply to any court of competent jurisdiction for the appointment of a successor Trustee.

Paragraph 21 of the Trust Agreement, titled "Amendment[,]" provides that "[a]ny amendment of this Trust Agreement shall require the consent of Trustee and every person with a beneficial interest under this trust."

---

5       The Trust Agreement specifies that "Lessee" means MEPC. On or about December 11, 1984, the Brusers acquired the Commercial Unit (Commercial Unit) via an Apartment Deed from 1778 Ala Moana Properties, Inc., f/k/a MEPC, assuming the responsibilities of the "Lessee" under the Trust Agreement pursuant to their Apartment Deed. On February 23, 1989, the Brusers conveyed their individual interests in the Commercial Unit to themselves as trustees of their own revocable living trust through a quitclaim deed. It is not disputed that the Brusers are the current owners of the Commercial Unit.

C.   The Discovery Bay Condominium Project

Discovery Bay consists of 665 leasehold residential units and one leasehold Commercial Unit.   Each unit is held by an "Apartment Owner" under the terms and conditions of a separate CCD for that unit originally issued in 1976, as each such CCD may have been subsequently assigned.   Each Apartment Owner is a member of the AOAO.   The AOAO retains a management company as Managing Agent of the Discovery Bay Condominium.

The lease term of the CCDs is through December 31, 2039 and each Apartment Owner pays rent on a quarterly basis to the trustee as the lessor under the CCD.   The rent for the 31-year period through December 31, 2007 was fixed in the CCDs, but must be reset again on January 1, 2019 and on January 1, 2030.

In addition to paying rent, the CCD of the Commercial Unit obligates the Commercial Unit owner to pay the trustee's fees as specified in Paragraph 11 of the Trust Agreement, stating "[t]he [Commercial] Apartment Owner shall also pay to the Lessor all fees and expenses charged or incurred by the Lessor as Trustee under the terms of said Trust Agreement dated June 16, 1974, as amended, as the same become due or are incurred."

D.   AOAO Acquisition of a Majority Interest in the Trust

In 2005, the AOAO began acquiring beneficial interests in the Trust and now holds approximately 62.6785% of such beneficial interests.   The balance of the beneficial interests is held by heirs of the Original Settlors, including the Gowans/Henderson,[6] Yokoyamas, and Sheetz appellees (collectively, Non-AOAO Beneficiaries), among others.[7]

---

[6]   Julie G. Henderson, as Trustee of the Julie G. Henderson Irrevocable Trust, the Jean K. Gowans Irrevocable Trust and the Louis L. Gowans, Jr. Irrevocable Trust, and Richard L. Gowans, as Trustee of the Richard L. Gowans Irrevocable Trust, hereinafter Gowans/Henderson.

[7]   The Non-AOAO Beneficiaries are Susan Sheetz, Patricia Sheetz Bow, Derek W. C. Wong, Bryant W.C. Wong, Arthur G.H. Wong Limited Partnership, Melissa Yoshioka, Kevin I. Yokoyama, as Trustee of the Kevin I. Yokoyama Trust and the Irvine K. Yokoyama, Jr. Trust, and the Gowans/Henderson.

### E. Procedural History

On March 1, 2013, BOH notified the AOAO and Non-AOAO Beneficiaries that it intended to resign as trustee, citing its "need to focus [its] efforts on . . . trusts with full discretionary powers." The AOAO contacted First Hawaiian Bank and Central Pacific Bank, the only eligible entities to serve as trustee per Paragraph 17(c) of the Trust Agreement, asking if they would serve as successor trustee. Both declined.

On January 28, 2014, BOH filed its "Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008 Through December 31, 2013" (Original Petition), seeking, *inter alia*, probate court approval to resign as trustee, appointment of a successor trustee, and amendment of the Trust Agreement to eliminate the requirement of a corporate trustee.

At the March 13, 2014 hearing on the Original Petition, the Probate Court denied the AOAO's request to dismiss the Original Petition, and instead continued the matter to give the parties an opportunity for further negotiation.

On May 9, 2014, BOH filed its first supplement to its Original Petition (First Supplement), proposing certain Trust Agreement reformations in lieu of resigning as trustee, including, *inter alia*: assured payment of reasonable trustee's fees and expanded trustee powers to conduct rent renegotiations.

On June 5, 2014, BOH filed its "Affidavit in Support of Attorneys' Fees and Costs" (first affidavit).

At the July 24, 2014 further hearing on the Original Petition, the Probate Court reiterated the fact that "whatever way the Petition goes" the Trust "needs a Trustee" and that "from the pleadings it looks like we're not going to get another corporate entity to come on board[.]" In its ruling, the Probate Court continued in part the hearing on the Original Petition, issuing its accompanying order on September 2, 2014.

Meanwhile, on August 29, 2014, in the United States District Court for the District of Hawai'i (District Court), the Brusers filed a "Complaint for Declaratory Judgment", seeking a determination as to whether they were liable for the trustee fee pursuant to Paragraph 11 of the Trust Agreement (Brusers' federal case).

On September 8, 2014, BOH filed its "Statement of Position" (First Statement of Position) with the Probate Court, in preparation for an upcoming September 11, 2014 hearing on the Original Petition. BOH requested that the Probate Court approve, *inter alia*, (1) a monthly trustee fee of $9,850 per month as a "reasonable fee" pursuant to Paragraph 11 of the Trust Agreement for five years, (2) payment of the monthly fee from the beneficiaries' trust income distributions for the five-year period, (3) increasing discretion for BOH, as trustee, to conduct rent renegotiations, and (4) instituting a 2% fee for conducting rent renegotiations, based on the average annual rent amount for one year for the rent period in question under the CCDs, also to be paid from the beneficiaries' trust income distributions instead of from the Commercial Unit owner. Requests (1) and (2) would later become and be referred to as the "Base Case" amendments, and requests (3) and (4) became the "Base Case Plus."

At the September 11, 2014 hearing, the Probate Court again noted the dearth of qualified alternative trustees. Pursuant to BOH's Statement of Position requests, the Probate Court held that it would use its "equitable powers and approve a monthly sum of $9,850 as a reasonable fee under Paragraph 11 of the trust for the five year period and approve the withholding of the monthly fee from the distributions to the beneficiaries for a five year period." The Probate Court further emphasized that its ruling was "subject to final determination" and the parties' ongoing negotiations regarding, *inter alia*, a reasonable trustee fee, and that the matter would be continued.

On October 1, 2014, BOH and the Non-AOAO Beneficiaries entered into the Agreement on Trustee's Fees, the terms of which

10

included that (1) BOH would be entitled to a monthly fee of $9,850 commencing October 1, 2014, for a five-year period, (2) after the five-year period, BOH would be entitled to a reasonable fee where BOH's standard fee schedule would be "one benchmark of reasonableness," (3) during the five-year period, BOH was entitled to withhold its fee from distributions to the beneficiaries, who would be reimbursed by amounts recovered from the Commercial Unit Owner (Brusers) and (4) BOH would be entitled to, "for the conduct of rent redeterminations" a fee of 2% of the average annual rent amount, for the remainder of the lease, i.e., through December 31, 2039.

On December 24, 2014, the Probate Court entered its "Interim Order" relating to the Original Petition, approving, *inter alia*, the Base Case amendments.

On January 6, 2015, the Brusers filed their "Petition Under HPR Rule 36 for Relief from Order and Reconsideration of Interim Order" relating to the Original Petition (Brusers' Motion for Reconsideration). The Brusers disputed that there was substantial evidence to show the new trustee fee was "reasonable," and argued that the Probate Court proceeding should have been stayed pending the Brusers' federal case.

On February 23, 2015, BOH filed another "Statement of Position for the March 5, 2015 Hearing" (Second Statement of Position), in which BOH argued again for Base Case Plus. The AOAO objected to the Base Case Plus.

At the March 5, 2015 hearing on the Original Petition and the Brusers' Motion for Reconsideration, the Probate Court again reiterated, and the AOAO agreed, that it did not appear a qualified successor trustee existed or would be willing to step in. The AOAO argued that the $9,850 fee requested by BOH was not reasonable. BOH again requested that the Probate Court approve the Base Case and Base Case Plus amendments, the latter over the objections of the AOAO. In its oral ruling, the Probate Court denied the Brusers' Motion for Reconsideration, continued the

Base Case Plus matter, and approved Base Case amendments as included in the Interim Order.

In a March 31, 2015 letter from BOH's counsel to the other parties, Vincent Piekarski (Piekarski) stated that if the Non-AOAO Beneficiaries decided not to advocate for Base Case Plus, then:

> In light of the March 5 hearing, Trustee's preference is to bring the issues raised by its Petition to resolution on the basis of one of the following: (i) the Base Case Reformations, (ii) [Base Case Plus reformations], or (iii) a withdrawal of the request for Trust reformations (although this is the least desirable of the three alternatives).

(Emphasis added.)

On April 16, 2015, in the District Court, BOH filed a "Motion for Partial Summary Judgment" including a counterclaim seeking a ruling that the Commercial Unit CCD requires the Brusers to pay the trustee fee pursuant to the Trust Agreement.

On April 17, 2015, the Probate Court issued its Trustee Fee Order and corresponding Judgment. The Trustee Fee Order approved the October 1, 2014 "Agreement on Trustee's Fees" as to: (1) the monthly $9,850 trustee fee as a "reasonable fee" pursuant to Paragraph 11 of the Trust Agreement, and (2) withholding of the trustee fee from distributions to the beneficiaries for a five-year period pending resolution of the Brusers' federal case. The Trustee Fee Order also stated that the parties would continue to discuss further Trust Agreement reformations, specifically the Base Case Plus amendments and BOH's counsels' request for attorneys' fees and costs.

Also on April 17, 2015, the Probate Court issued its Order Denying the Brusers' Motion for Reconsideration and corresponding Judgment.

Also on April 17, 2015, BOH filed another "Affidavit in Support of Attorneys' Fees and Costs" (second affidavit).

On April 27, 2015, BOH filed its "Statement of Position for the April 30, 2015 Hearing" (Third Statement of Position), in which, among other things, BOH reported that there was not unanimous approval of the Base Case Plus amendments.

On April 28-29, 2015, the AOAO, Gowans/Henderson, Sheetzs, and Yokoyamas filed their respective Statements of Position in preparation for the April 30, 2015 hearing.

At the April 30, 2015 hearing on the Original Petition and the BOH Affidavit in Support of Attorneys' Fees and Costs, counsel for BOH explained that Base Case Plus was better for the beneficiaries because granting the trustee greater discretionary powers during rent renegotiation would be more efficient. Attorneys for the Non-AOAO Beneficiaries added that the previous lease rent negotiations took over a year and cost "tens of thousands of dollars" in attorneys' fees, and resulted in an agreement on how to proceed that was incorporated in the Base Case Plus amendment, with the exception of the 2% fee. The AOAO argued that the Base Case Plus amendments were unnecessary as the Trust Agreement could be read to give the trustee the authority to negotiate the lease rents. The Brusers argued that they should not be saddled with the expense of the fees and costs sought by BOH without proof of the work done by BOH. In response to the AOAO's argument that BOH's attorneys' fees were not "appropriately incurred," BOH pointed out that its second affidavit reflected billing exclusive of work done for BOH's resignation, and included work done to bring the pending issues to resolution. The Probate Court ruled that it would adopt the Base Case Plus amendments and also approved BOH's request for fees and costs for the periods of May 12, 2014 through March 31, 2015 and April 1, 2015 through June 15, 2015 and allowed counsel to submit their arguments regarding why certain fees were not acceptable.[8]

_____

[8] Gowans/Henderson, joined by AOAO, argued that BOH's attorneys' fees request should be reduced due to duplicative and otherwise unnecessary work by BOH's attorneys. The AOAO also separately objected to BOH's request in total, arguing that all the attorneys' work related to BOH's request to resign and should not be charged against the trust. The Brusers also objected, arguing BOH had failed to prove the costs and fees request was reasonable, improperly included claims for "clerical monitoring of tasks within their own firm[,]" contained impermissible block billing and non-

(continued...)

On May 18, 2015, the Brusers filed their timely appeal from the Order Denying the Brusers' Motion for Reconsideration and corresponding Judgment.

Also on May 18, 2015, the AOAO filed their timely appeal from the Trustee Fee Order and corresponding Judgment.

On May 22, 2015, BOH filed its third "Affidavit in Support of Attorneys' Fees and Costs" (third affidavit) in support of additional fees and costs during the April 1, 2015 to May 15, 2015 time frame.

On June 10, 2015, the AOAO filed its "Petition for Reconsideration of the Court's April 30, 2015 Decision with Respect to Modification of the June 6, 1974 Trust Agreement" (AOAO Motion for Reconsideration).

On July 13, 2015, the Probate Court entered its Trust Amendment Order and Trust Amendment Judgment. The Order specified that the Trust Agreement would be reformed by adopting the Base Case Plus reformations. The new "Paragraph 2A" provided, *inter alia*, that the trustee shall have the discretion without need of approval from the Probate Court or beneficiaries to conduct rental redeterminations pursuant to the CCDs. The Order also granted BOH's counsels' request for attorneys' fees and costs, subject to further proceedings.

On July 21, 2015 in the Brusers' federal case, the District Court granted BOH's motion for partial summary judgment and held that the "plain and ordinary meaning of the terms of the Apartment Deed and the CCD require the Brusers to pay 'all fees and expenses' as provided in the Trust Agreement. One such fee is the Trustee Fee."

On August 12, 2015,[9] the AOAO filed its timely appeal of the Trust Amendment Order and Trust Amendment Judgment.

---

[8](...continued)
awardable costs, contained duplicative services, and were not allocated according to the parties to which the services pertained.

[9]     The AOAO's notice of appeal was amended on September 30, 2015, subsequent to this court's consolidation order.

On August 13, 2015, the Probate Court issued its Attorneys' Fees and Costs Order and corresponding Judgment. The Order listed the representations made by BOH's counsel at the April 30, 2015 hearing and subsequent pleadings on the matter as the basis for its decision.

Also on August 13, 2015, the Probate Court held a hearing on the AOAO's Motion for Reconsideration. For the first time, the AOAO argued its position that the Trust Agreement was a land trust. The Probate Court noted that the land trust argument had not been previously raised nor communicated to the other parties. The AOAO also argued that the reformations in the Base Case Plus proposal "changed the fundamental nature" of the Trust Agreement, contradicting the Original Settlors' intent. BOH argued that the unanticipated circumstances of the instant case justified the modifications, specifically the AOAO being both a beneficiary and representative of the apartment owners, thereby creating a conflict of interest. The Probate Court denied the AOAO's Motion for Reconsideration.

On August 27, 2015, the AOAO filed its timely appeal from the Attorneys' Fees and Costs Order and Attorneys' Fees and Costs Judgment.

On September 22, 2015, the Probate Court entered its Order denying the AOAO's Motion for Reconsideration and corresponding Judgment.

II. Standards of Review

1. Continuances

"A court has the discretion to grant or refuse a continuance of a proceeding in the orderly administration of justice. This discretion is a judicial one and is subject to review for abuse." Sapp v. Wong, 62 Haw. 34, 41, 609 P.2d 137, 142 (1980). "Generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." State v. Kong, 140

15

Hawai'i 103, 109, 398 P.3d 692, 698 (2017) (quoting State v. Kahapea, 111 Hawai'i 267, 278, 141 P.3d 440, 451 (2006)).

### 2. Equitable Relief

> The relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant. Aickin v. Ocean View Invs. Co., Inc., 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (internal quotation marks, citation, and brackets omitted).

Matter of Ishida-Waiakamilo Legacy Trust, 140 Hawai'i 69, 73, 398 P.3d 658, 662 (2017).

### 3. Award of Attorneys' Fees and Costs

> This court reviews a lower court's award of attorneys' fees for abuse of discretion. Allstate Ins. Co. v. Pruett, 118 Hawai'i 174, 179, 186 P.3d 609, 614 (2008) (citation omitted). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. (quoting Lepere v. United Pub. Workers, 77 Hawai'i 471, 473, 887 P.2d 1029, 1031 (1995)). In other words, "[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. (quoting TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 253, 990 P.2d 713, 723 (1999)).

Hart v. Ticor Title Ins. Co., 126 Hawai'i 448, 455, 272 P.3d 1215, 1222 (2012) (brackets in original).

### 4. Motion for Reconsideration

An order ruling on a motion for reconsideration is reviewed under the abuse of discretion standard. Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008) (citing Cho v. State, 115 Hawai'i 373, 381, 168 P.3d 17, 25 (2007)).

## III. Discussion

This opinion will first address the points of error raised by the AOAO, followed by the points of error raised by the Brusers.

16

### A. AOAO

#### 1. Continuance

The AOAO argues that the probate court erred in failing to deny the Original Petition in its entirety at the March 13, 2014 hearing and instead continuing the matter.[10]

HPR Rule 13(a) provides that the Probate Court, "in its discretion may continue any hearing to a later date and time . . . when in the interest of justice, judicial efficiency, or fairness, a continuance will permit all parties to the proceeding to be properly and fully represented." The commentary to HPR Rule 13 provides: "[t]his rule would also allow the court to continue the hearing when justice demands; for example, when an heir or beneficiary appears without counsel and may want to object to the petition." HPR Rule 13(a) cmt.

In Sapp, the Supreme Court of Hawai'i held that the trial court had abused its discretion in failing to grant a motion to continue, citing, inter alia, the following factors: (1) the circumstances did not suggest that the appellant, movants for the continuance, merely sought general delay; (2) the continuance was instead sought for the limited purpose of locating appellees to serve them with subpoenas and compel their attendance in court; (3) granting the continuance would not have been prejudicial to, or have inconvenienced, the appellees; and (4) the failure to grant the continuance was prejudicial to the appellants, as they did not have a reasonable opportunity to try their case upon its merits. Sapp, 62 Haw. at 41, 609 P.2d at 142.

At the March 13, 2014 hearing, the AOAO argued that BOH's Original Petition sought to reform the Trust Agreement rather than seeking a more collaborative solution, and therefore should be dismissed. The Probate Court responded:

> Well, maybe because there hasn't been an opportunity to
> communicate and work something out. I mean, I've seen that

---

[10] This opinion will address AOAO's arguments regarding the merits of its motion to dismiss in section A.2.a infra.

17

alternative alluded to in the submissions. And, if it cannot be worked out, if they [sic] cannot be just compensation for work done, then maybe the court of equity should do something about it.

Later, the Probate Court added that although it understood the AOAO's argument that it was odd for BOH to file their petition and then seek a continuance, the Probate Court stated it would "rather see that this issue be addressed" and "like to give the parties an opportunity to try and resolve the issues."

The continuance was not for general delay, but for the limited purpose of facilitating further negotiation between the parties so that they could reach an out-of-court resolution. Furthermore, AOAO has not identified any prejudice suffered as a result of the continuance. Based on the foregoing, it does not appear that the Probate Court abused its discretion in continuing the Original Petition.

### 2. Trust Agreement Amendments

The main thrust of the AOAO's appeal is that the Probate Court did not have the power to amend the Trust Agreement, either as a land or traditional trust indenture, absent unanimous consent of the beneficiaries and "emergency circumstances" pursuant to Hawai'i precedent. The amendments with which the AOAO takes issue include the (1) increase of the trustee fee to $9,850 per month, (2) requirement that the fee come from the beneficiaries' disbursements instead of payment by the Commercial Unit owner, the Brusers, for five years, and (3) rent renegotiation reformations, including the trustee's fee and discretionary powers.

As an initial matter, the fact that the AOAO raised the land trust argument for the first time at the August 13, 2015 hearing on their motion for reconsideration would normally render the argument waived.[11] Notwithstanding waiver, the facts of the

---

[11] In State ex rel. Office of Consumer Protection v. Honolulu Univ. of Arts, Sciences and Humanities, 110 Hawai'i 504, 517-18, 135 P.3d 113, 126-27 (2006), the Supreme Court of Hawai'i held that:

(continued...)

instant case do not support the AOAO's argument that the Trust Agreement created a land trust.

Hawaii Revised Statutes (HRS) § 558-2 located in Chapter 558 titled "Land Trusts--Beneficiary Controlled," and which became effective on June 1, 1978 (1978 Haw. Sess. Laws Act 151, § 2 at 285), provides:

> [§558-2] **Purpose.** The purpose of this chapter is to authorize those trusts <u>which incorporate it by reference</u> to convey legal and equitable title to real estate in trust to a qualified trustee; to define the nature and extent of the beneficiaries' interest in the trust property; to define the obligations of persons dealing with the trustee to inquire into the trustee's authority; and to provide for disclosure of the identity and interest of the trust beneficiaries.

(Emphasis added.)

Although the Trust Agreement was amended three times, these amendments preceded the effective date of HRS § 558-2, precluding incorporation by reference. The amendments also indicate that the Original Settlors understood they could amend the terms of the Trust Agreement, but did not elect to amend it a fourth time to make explicit any intent to create a land trust. Furthermore, neither the statutory language nor legislative history indicate that HRS § 558-2 was intended to apply retroactively or that it was merely a codification of preexisting law.[12]

---

[11](...continued)
> [t]his court has previously stated that the purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion. Stated differently, reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.

(Citations and internal brackets omitted.) In this case, the land trust statute was enacted in 1978, well before this litigation commenced and well before the AOAO filed any responsive pleadings.

[12]     The Standing Committee Report from the House Committee on Consumer Protection and Commerce and Judiciary for Senate Bill 518, the bill that would become HRS § 558-2, states:

> The purpose of this bill is to authorize the <u>creation</u> of land trusts in which legal and equitable title to real

(continued...)

We therefore disagree with the AOAO's argument that the Trust Agreement created a land trust and analyze the issues raised under the law of traditional trusts.

Modification of trust documents was addressed long ago in Hawaiian Tr. v. Gosner, 40 Haw. 245 (1953) and Hawaiian Tr. Co. v. Breault, 42 Haw. 268 (1958). In the former, the Supreme Court of the Territory of Hawai'i was asked to overturn the chancery court's denial of the request of the beneficiaries to convey the trust real property to them rather than to sell the property and distribute the proceeds as specified in the trust. The Gosner court granted the beneficiaries relief, deciding that the beneficiaries could revoke the power of sale. Gosner, 40 Haw. at 256 (quoting from 3 George Gleason Bogert, The Law of Trusts and Trustees: a Treatise Covering the Law Relating to Trusts and Allied Subjects Affecting Trust Creation and Administration, with Forms § 741 (1946).

In the latter case, the settlor's will provided that the trustee "shall pay" trust income for the maintenance of the settlor's mother and her maid who lived in the settlor's home, an asset of the trust. Breault, 42 Haw. at 269-70. The will also provided that the trustee "shall not" sell or otherwise dispose of the home, and "shall pay" all expenses for its preservation from the trust income. Id. By the time of the Breault litigation, the funds held by the trustee had been exhausted and the only remaining substantial asset was the home, which required substantial repairs. Id. at 270. Neither the mother nor the

---

(...continued)
> estate is held in trust by a qualified trustee while rights and benefits of ownership are retained by the beneficiary and treated as his personal property.

> . . . .

> This bill would specifically authorize such land trusts by adding a new chapter to the Hawaii Revised Statutes containing the necessary enabling provisions thereto. It allows such trusts to be created[.]

H. Stand. Comm. Rep. No. 827-78, in 1978 House Journal, at 1782 (emphasis added).

maid lived in the home at that time.  Id. at 270-71.  The circuit court decided that selling the home was necessary to preserve the corpus of the trust, that the trustee could sell the residence, provided the right to live therein was waived by the mother and maid, and that the net proceeds of the sale should be held by the trustee as principal with income from the investment of those proceeds going towards the maintenance of the mother and maid. Id. at 271.

The Supreme Court of the Territory of Hawaiʻi held that "[w]here certain emergencies occur or unusual circumstances arise not anticipated by the settlor in order to carry out the ultimate purpose of the settlor and to preserve or prevent destruction of the trust estate, the chancellor may order a deviation from the terms thereof."  Id. at 271 (emphasis added).  The court also noted that "[s]omething in the nature of an emergency is required to move the court to authorize a deviation from the settlor's plan of administration."  Id. at 272 (quoting Bogert, supra, Law of Trusts and Trustees § 742); and citing Gosner, 40 Haw. at 253. The Breault court explained:

> the present case is an excellent illustration of the necessity to deviate from the prohibition of the sale as the property is deteriorating rapidly, needs extensive repairs for which the trustee has no funds, and is not being used for residence purposes, as provided.  The property must be sold to preserve the intent of the trust.

Id. at 272.

Breault and Gosner dealt with the trustee's ability to sell trust assets.  However, it stands to reason if such fundamental provisions may, under the right circumstances, be modified, provisions that do not involve such significant trust provisions could also be modified, again, under the right circumstances and if consistent with the purposes of the trust. Although deciding that the trustee had the ability to sell trust property, the Breault court appeared to recognize broader modification authority when it stated,

> There are many cases in which conditions and circumstances arise which a settlor could not have foreseen and it is desirable and wise to free the trust from the directions

> which the settlor has made in his effort to continue his
> control. Chancery has evolved the doctrine that it has power
> and a duty under certain circumstances to authorize a
> modification of or deviation from the terms of the trust.
> (54 Am. Jur., Trusts, § 284, pp. 224, 225.)

Breault, 42 Haw. at 271.

The ability to modify administrative provisions of a trust is recognized by Bogert, often cited by Hawai'i courts:

> The court of equity possesses power to alter the
> administrative provisions of a private trust where, due to
> circumstances not known to the settlor or anticipated by
> him, or due to the unwisdom of the settlor's direction, a
> change is necessary or highly convenient to insure the
> accomplishment of the settlor's fundamental purposes. The
> court has no power to make other changes in administrative
> terms nor can it alter the financial interests of the
> beneficiaries or add new beneficiaries.

George Gleason Bogert and George Taylor Bogert, Handbook of the Law of Trusts § 146 (5th ed. 1973). See also Restatement (Third) of Trusts § 66 (2003) (A court may "modify an administrative or distributive provision of a trust, or direct or permit the trustee to deviate from an administrative or distributive provision, if because of circumstances not anticipated by the settlor the modification or deviation will further the purposes of the trust.") (emphasis added) (Restatement 3d). Although the unanticipated circumstances referred-to here are likely to be circumstances that have changed since the creation of the trust, this is not a requirement; the unanticipated circumstances requirement is satisfied so long as the settlor was unaware of the circumstances in establishing the trust. Restatement 3d cmt. (a). Furthermore, the circumstances need not rise to the level of an emergency nor cause the frustration of the trust purposes. Id. Thus, a probate court has the authority, under certain circumstances, to modify the terms of a trust.

With these concepts in mind, we turn to the decisions challenged by the AOAO.

### a. Resignation of BOH as Trustee.

AOAO argues that the Probate Court erred in not dismissing BOH's Original Petition as BOH did not show that its requested relief could be granted. In support, AOAO argues that,

22

under the terms of the Trust Agreement, BOH could not resign before a successor trustee was appointed and amendment of the trust to remove the corporate trustee requirement could not be made without unanimous agreement by the Beneficiaries. We disagree.

The plain language of Paragraph 17 of the Trust Agreement governing "Resignation, Removal and Substitution of Trustee" does not specify that a successor trustee must be appointed for the trustee's resignation to be effective. It states only that the resignation shall not take effect for sixty days after notice is given *unless* before that time a successor trustee is appointed and if no successor trustee is appointed within this sixty day period, application to the court for that purpose can be made. The Trust Agreement specifies no preconditions for resignation.

Here, BOH applied to the Probate Court by filing its Original Petition almost eight months after its notice of resignation. While the Probate Court could have modified the Trust Agreement because changed or unknown circumstances--the lack of an eligible and willing alternative trustee[13]--arguably prevented the purpose of the Original Settlors to create a trust to administer the trust property for the benefit of the Beneficiaries, see Breault, 42 Haw. at 271-72, it was clearly authorized under the terms of the Trust Agreement to appoint a successor trustee after the resignation of an existing trustee. As a result, the Probate Court was not categorically prevented from considering the Original Petition and it was not error for it to continue rather than dismiss this action.

b. **Trustee Fee Order**

The Trustee Fee Order granted the Base Case amendments, which included (1) an increased trustee fee of $9,850 per month

---

[13] Neither the AOAO, Non-AOAO Beneficiaries, nor BOH disputes the fact that there was no other qualified successor trustee willing to replace BOH. In fact, as events unfolded, the Probate Court never did modify the Trust Agreement to remove the corporate trustee requirement.

and (2) payment for five years from the disbursements to the Beneficiaries, with reimbursements as are received from the Brusers. This amount was adopted from the October 1, 2014 "Agreement on Trustee's Fees" entered into by BOH and the non-AOAO Beneficiaries. The purpose of the five year period, as stated in the Agreement on Trustee's Fees, was "to allow time to resolve the liability of the Commercial Unit Owner for Trustee's fees" presumably in response to the pending Brusers' federal case which was to determine who was liable to pay the trustee's fees.[14] The AOAO argues that, in addition to violating the unanimous consent requirement for amendments to the Trust Agreement, there was not "substantial evidence" to support the new $9,850 trustee fee amount.

The Trust Agreement does not specify how to measure or evaluate the trustee's fee. Paragraph 11 of the Trust Agreement provides only that the "Trustee shall be entitled to such reasonable fees as from time to time may be mutually agreed upon." There was not unanimous agreement by the Beneficiaries regarding the amount of BOH's fee going forward and there is no provision in the Trust Agreement to resolve the failure of the Beneficiaries to mutually agree. Thus, the modification here was, at most, the addition of recourse to the court in the event the Beneficiaries could not mutually agree as to the trustee's fee. However, the lack of a trust provision to resolve the failure to mutually agree is provided by statute.

HRS § 607-18 (2016)[15] provides, in relevant part:

> §607-18 **Compensation of trustees.** (a) Unless the trust instrument otherwise provides, or the settlor and trustee otherwise agree, or, after the settlor's death, all the beneficiaries and the trustee otherwise agree, the <u>trustee shall be entitled to the compensation set forth in this section and the compensation shall be deemed to be</u>

---

[14] As previously stated, the District Court decided, on July 21, 2015, that the Brusers, as owners of the Commercial Unit, were responsible for paying the trustee's fee under the terms of the Commercial Unit's CCD.

[15] The published fee schedule portion of HRS § 607-18 was enacted in 2014, and became effective on January 1, 2015, prior to the April 17, 2015 Trustee Fee Order. 2014 Haw. Sess. Laws Act 212, §2 at 727, 730.

24

> reasonable. For good cause shown, the court may also approve any other fee arrangement that it deems reasonable.
>
> (b) Banks, trust companies, and individuals who in the ordinary course of business serve as fiduciaries shall, when serving as trustees, be entitled to reasonable compensation, which may be set forth in their published fee schedules and may be amended from time to time; provided that advance written notice of any amendment to the fee schedule is provided to the settlor or, after the settlor's death, to all beneficiaries who are vested at the time of the notice.

(Emphasis added.)

The AOAO itself recognized the value of a corporate trustee given the substantial nature of the trust assets, the lack of a bond requirement, and the experience and financial wherewithal of a corporate trustee. According to its published fee schedule, BOH charges a trustee's fee based on six percent of a trust's annual income for properties managed by a third-party property manager. The Base Case, agreed-to by the Non-AOAO Beneficiaries, resulted in a fee of $9,850 per month, equivalent to 3.5% of the trust's annual income. Therefore, as measured by the statute, the Base Case fee amount was authorized and reasonable.

The AOAO argues that there was insufficient evidence to support the fee amount. However, it is undisputed that the Trust Agreement lists a number of tasks and responsibilities of the trustee, including granting apartment leases, employing assistants, accountants and attorneys, filing tax returns, collecting and distributing trust income to the Beneficiaries, enforcing the apartment leases, and facilitating the Beneficiaries' renegotiation of lease rents. AOAO does not argue that these tasks were not, or would not be done.

The Base Case did not remove the Brusers' liability, as the Commercial Unit owners, to pay the trustee's fee.[16] However,

---

[16] Paragraph 4 of the Agreement on Trustee's Fees provides:

> 4. During the Five-Year Period, Trustee shall be entitled to withhold Trustee's fees from distributions to the beneficiaries. The amounts that are recovered by Trustee
>
> (continued...)

25

the Agreement on Trustee's Fees does state that the Non-AOAO Beneficiaries "shall support a reformation of the Trust consistent with the foregoing" including the provision allowing withholding the fee from the Beneficiaries' distributions. The Trustee Fee Order "approves" the Agreement on Trustee's Fees but does not explicitly modify the Trust Agreement in this regard. Finally, the Trustee Fee Order does not explain why such a modification was necessary or even highly convenient. Breault, 42 Haw. at 271; Bogert, supra, Handbook of the Law of Trusts § 146. Therefore, to the extent the Trustee Fee Order obligates the trustee's fee to be paid, at least initially, from the Beneficiaries' distributions, it is vacated.

### c. Trust Amendment Order

Pursuant to the Agreement on Trustee's Fees, the Trust Amendment Order adopted the Base Case Plus reformations. The main thrust of the AOAO's argument against the Trust Amendment Order is that there were not sufficient circumstances pursuant to Breault to deviate from the Trust Agreement.

Again, a court may modify administrative provisions of a trust only where there are unknown or unanticipated circumstances, and the deviation will preserve the trust estate or prevent its destruction. Bogert, supra, Handbook of the Law of Trusts § 146.

In a March 27, 2015 letter from BOH's counsel Piekarski to the other parties, Piekarski stated:

> As you know, the Bank's position throughout this Proceeding has been that the fee arrangements and the Trust

---

[16](...continued)
from the Commercial Unit Owner shall be distributed to the beneficiaries, as and when recovered, as reimbursement for the amounts that have been withheld as aforesaid. The Beneficiary Parties are agreeing to the withholding of Trustee's fees for the Five-Year Period in order to allow time to resolve the liability of the Commercial Unit Owner for Trustee's fees. Such withholding shall not discharge the Commercial Unit Owner from its obligation to pay Trustee's fees.

As of the date of the Trustee Fee Order, the Brusers' litigation in the District Court was still pending.

> reformations were a package. However, at the March 5 hearing, the Bank acquiesced to the request of [the Gowans/Henderson's counsel] and others to separate the fee arrangements from the Trust reformations so that, if the fee arrangements were approved, the Bank would withdraw its resignation regardless of whether the Trust reformations were approved. . . . Accordingly, this letter confirms that the <u>Bank will withdraw its resignation when the order and judgment approving the [Base Case Proposal] and confirming ordering paragraphs A and B of the Interim Order become final without regard to whether the Trust has been reformed [pursuant to Base Case Plus proposals]</u>.

(Emphasis added.)

In the subsequent March 31, 2015 letter from Piekarski to the other parties, Piekarski stated that if the Non-AOAO Beneficiaries decide not to advocate the previously proposed reformations dealing with Rental Renegotiation, then:

> In light of the March 5 hearing, Trustee's preference is to bring the issues raised by its Petition to resolution on the basis of <u>one of the following</u>: (i) the Base Case Reformations, (ii) [Base Case Plus], or (iii) a withdrawal of the request for Trust reformations (although this is the least desirable of the three alternatives).

(Emphasis added.)

The Probate Court's aforementioned power to modify administrative provisions of the trust does not apply to the Base Case Plus reformations based on the statements in Piekarski's letters. The letters indicate that BOH, as trustee, would (1) withdraw its resignation if granted the requested increase in monthly fees, and (2) prefer, although as a least-favored option, to bring its Original Petition to resolution by withdrawing the request for approval of the Base Case Plus reformations.

None of the other parties' Statements of Position filed in preparation of the April 30, 2015 hearing, nor anything stated at the hearing itself, pointed to a continued exigency meriting deviation from the Trust Agreement. Several parties pointed to past difficulties in organizing the 2008 rent renegotiation which resulted in an agreement between all parties similar to the proposed rent renegotiation reformations. The next rent renegotiation, for the period to begin on January 1, 2019, was, at the time of the Trust Amendment Order, years away and not "something in the nature of an emergency" as presented in

27

Breault. 42 Haw. at 270-273 (citing, *inter alia*, the presently "exhausted" funds held by the Breault trustee, neither the mother or maid occupying the home any longer, and ongoing rapid deterioration of the home for which no funds currently existed to make the needed repairs).

In their response to BOH's Statement of Position for the April 30, 2015 hearing, the Sheetz appellees cite to a treatise section which provides:

> 6. The Court has power to order the reformation:
>
> As shown in earlier sections, the court possesses and frequently exercises the power, on the application of the trustee or one or more beneficiaries, to modify the terms of the trust in order to effectuate the accomplishment of the purposes of the settlor. Where administrative provisions handicap the trustee, or the trustee lacks an essential power, the court frequently releases the trustee from the objectionable provision, or grants the needed authority, or otherwise changes the trust as to methods of operation, so as to enable the trustee to achieve the primary purposes of the settlor.

George G. Bogert et al, The Law of Trusts and Trustees § 994

(Emphasis added.)

However, this provision would not support granting the rent renegotiation reformations outlined in Base Case Plus. Unlike the renegotiated trustee fee of $9,850, made pursuant to Paragraph 11 of the Trust Agreement which provides for such fee to be mutually agreed upon from time to time, the Trust Agreement is clear regarding the Trustee's limited role in the lease rent renegotiations.[17] While the negotiations in the prior term may have been onerous, it is equally true that despite the trustee's

---

[17] Section 68 of the American Jurisprudence treatise on Trusts further provides, in relevant part:

> A trust can be modified if provision are ambiguous or if a slavish adherence to the terms of the trust would defeat the primary purpose of the trust; however, the common law of trusts does not permit the creation of a new agreement under the guise of a modification or reformation. In any event a court has no authority to modify trust provisions if there is not a compelling reason for the modification.

76 Am. Jur. 2d Trusts, §68 (emphasis added).

lack of authority to participate in the negotiations in a substantive way, the parties to the negotiations reached an agreement as to procedure. There is no evidence that the same procedure--without BOH's substantive participation--could not be followed in the next round of negotiations.

Based on the foregoing, we hold that the Probate Court abused its discretion by granting the Base Case Plus rent renegotiation reformations in its Trust Amendment Order and corresponding Judgment.

### 3. BOH's Attorneys' Fees and Costs Order

As a general rule, each party to litigation must pay his own counsel's fees, in the absence of an agreement or statutory authority for the recovery thereof. In re Campbell's Estate, 46 Haw. 475, 522, 382 P.2d 920, 953 (1963); Nelson v. Hawaiian Homes Comm'n, 130 Hawai'i 162, 166, 307 P.3d 142, 146 (2013). However, "[a]s an exception to this general rule, when litigation is in the advancement of, and not in opposition to, the interests of all the beneficiaries of a trust, counsel fees may be allowed to litigants out of the estate. Evans v. Garvie, 23 Haw. 694[, 695 (1917)]; Estate of Lalakea, 26 Haw. 243, [at 275-76 (1922).]" In re Campbell's Estate, 46 Haw. at 522, 382 P.2d at 953 (emphasis added).

The AOAO argues none of the tasks charged by BOH counsel were in the interest of all beneficiaries, namely: (1) efforts to increase in BOH's trustee fee, (2) assurance that the trustee fee would come from the Beneficiaries' distributions rather than the Commercial Unit owner, and (3) pursuit of the the Base Case Plus rent renegotiation modifications.[18] The Probate Court did not make any findings regarding whether and to what extent this litigation was for the benefit of all beneficiaries.

---

[18] The AOAO also challenges the fees charged by BOH's counsel in relation to BOH's effort to resign. However, as explained at the April 30, 2015 hearing and in BOH's answering brief, such fees were written off by BOH and its counsels' law firm or were awarded in an order not appealed by the AOAO in this consolidated appeal.

Furthermore, assuming that the litigation was in the interest of all parties, it is not clear, on this record, how the Probate Court reached the amount of its award. In its Attorneys' Fees and Costs Order, the Probate Court granted BOH's counsels' request for fees for the period of May 12, 2014 through June 15, 2015 in the amount of $152,605.10. However, BOH's counsels' affidavits in support of its attorneys' fees and costs request specify that they cover the dates of May 12, 2014 through May 14, 2015, with a combined requested amount of $154,826.75.[19] The Probate Court did not include, nor does the record reveal, any reasons for the reduction of the fees and costs requested. See Ranger Ins. Co. v. Hinshaw, 103 Hawai'i 26, 33, 79 P.3d 119, 126 (2003) (in the denial of attorneys' fees under HRS § 607-14, "[t]he reasonableness of an expenditure of attorneys' fees is a matter within the discretion of the circuit court . . . [and, thus, a] detailed explanation of the rationale underlying the reduction in attorneys' fees awarded is not necessary." However, the denial or reduction of attorneys' fees must have support in the record." (citation omitted)).

Therefore, we must vacate the Attorneys' Fees and Costs Order and remand for a determination of which portions, if any, of this litigation were in the advancement of, and not in opposition to, the interests of all the beneficiaries under the Trust Agreement and to state its reasons for reducing the amount of attorneys fees awarded.

### 4. The AOAO's Motion for Reconsideration

In its AOAO Motion for Reconsideration, AOAO argues that the Probate Court erred in granting the Base Case Plus rent renegotiation amendments because there was not unanimous beneficiary consent.

---

[19] This amount does not include $1,884.78 that BOH's counsel listed as fees arising out of work anticipated after the May 22, 2015 affidavit.

In light of the foregoing discussion, we need not address the AOAO's argument with regard to the Order Denying AOAO's Motion for Reconsideration and corresponding judgment.

### B. Brusers

#### 1. Jurisdiction

On appeal, the Brusers argue that the Probate Court did not have jurisdiction to determine the trustee's fee amount. However, this argument contradicts their position taken before the Probate Court at the September 11, 2014 hearing:

> We're not taking a position today as to what the [trustee] fees should be because that's between -- that's under the trust. And this court has jurisdiction under the trust. And we can't take a position because we're not one of the beneficiaries. We're just simply here to protect the Brusers' rights and to ask this court to not overstep its jurisdiction as we've laid out. I don't want to repeat the jurisdictional arguments that we've laid out.

(Emphasis added.)

Furthermore, HRS § 560:7-201 (2006) provides, in relevant part:

> §506:7-201 Court; jurisdiction of trusts. (a) The court has jurisdiction of proceedings initiated by trustees and interested persons concerning the internal affairs of trusts. Proceedings which may be maintained under this section are those concerning the administration and distribution of trusts, the declaration of rights and the determination of other matters involving trustees and beneficiaries of trusts. These include, but are not limited to, proceedings to:
>
>   . . . .
>
>   (2) Review trustees' fees and to review and settle interim or final accounts[.] . . .

(Emphasis added.)

Based on the foregoing, we find the Brusers' argument to be without merit.

#### 2. Nondisclosure

The Brusers argue that they are victims of fraud because the "Fee Owners and/or the Trustee" failed to disclose to them at the time they purchased the Commercial Unit that the Trustee Fee could increase dramatically.

31

As an initial matter, the fact that the Brusers are raising this argument for the first time on appeal ordinarily deems the argument waived. Molinar v. Schweizer, 95 Hawai'i 331, 339-340, 22 P.3d 978, 986-87 (2001), Mauna Kea Power Co., Inc. v. Board of Land and Natural Resources, 76 Hawai'i 259, 262 n. 2, 874 P.2d 1084, 1087 n. 2 (1994), Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 107, 58 P.3d 608, 618 (2002) (holding that "[l]egal issues not raised in the trial court are ordinarily deemed waived on appeal.").

Even if not waived, the Brusers' argument is unpersuasive. In Santiago v. Tanaka, the Supreme Court of Hawai'i held that claims for nondisclosure are governed by the Restatement (Second) of Torts § 551 (Am. Law Inst. 1977) which provides, in relevant part:

> (1)    One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
>
> (2)    One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> (b)    matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; . . . .

Santiago v. Tanaka, 137 Hawai'i 137, 149, 366 P.3d 612, 624 (2016).

When the Brusers purchased the Commercial Unit, their Apartment Deed stated that they agreed to "pay all other costs, expenses, assessments and charges payable by the apartment owner as set forth in the [commercial CCD.]" The Commercial CCD provides: "[t]he Apartment Owner shall also pay to the Lessor all fees and expenses charged or incurred by the Lessor as Trustee under the terms of said Trust Agreement dated June 16, 1974, as amended, as the same become due or are incurred." Paragraph 11 of the Trust Agreement additionally provides:

32

> 11. <u>Trustee's Fees.</u> The Trustee shall be entitled to
> such reasonable fees <u>as from time to time may be mutually
> agreed upon</u>. In addition to said reasonable fees, the
> Trustees shall have the right to incur such expenses and to
> be reimbursed by the Lessee[20] as provided for by the leases;
> and to incur such expenses and be reimbursed for
> extraordinary services. The <u>Lessee or its assigns will pay
> the Trustee's fee and expenses</u> until December 31, 2039 or
> the earlier termination of this trust.

(Emphasis added.) Based on the foregoing, it does not appear that the Brusers' duty to pay the Trustee Fee or the Trustee Fee's variability were not disclosed to the Brusers at the time of their purchase.

### 3. Commercial CCD Interpretation

The Brusers also argue that the Probate Court erred in interpreting the plain meaning of the language pertaining to the Trustee Fee in the Trust Agreement, as incorporated in their Commercial Unit CCD. Specifically, the Brusers argue that the duties of the trustee under the Trust Agreement, prior to the Probate Court's amendments, generated "purely administrative work," whereas the new duties generate "fiduciary fees" for which the Brusers did not bargain and are thus not responsible to pay.

As with the previous point of error, the Brusers are raising this argument for the first time on appeal, and would ordinarily be subject to waiver. <u>Molinar</u>, 95 Hawai'i at 339-340, 22 P.3d at 986-87, <u>Mauna Kea Power Co., Inc.</u>, 76 Hawai'i at 262 n. 2, 874 P.2d at 1087 n. 2, <u>Ass'n of Apartment Owners of Wailea Elua</u>, 100 Hawai'i at 107, 58 P.3d at 618.

Even if the argument was not waived, the Brusers' "plain meaning" argument still must fail. In addition to allotting responsibility for "all" trustee fees to the Commercial Unit owner, the Trust Agreement also states that "[a]ny amendment to this Trust Agreement shall require the consent of Trustee and every person with a beneficial interest under the trust." Apart

---

[20] In the Trust Agreement, MEPC is the Lessee. MEPC was renamed 1778 Ala Moana Properties, Inc. in 1983, prior to selling the Commercial Unit to the Brusers.

from requiring unanimous consent, there do not appear to be any restrictions on how the Trust Agreement may be amended.

The language of the Commercial Unit CCD and the Trust Agreement are unambiguous: by purchasing the Commercial Unit, the Brusers have an obligation to pay the trustee's fees, pursuant to the amendable provisions of the Trust Agreement. Based on the foregoing, it does not appear that the Probate Court erred in its interpretation of the Brusers' contract.

### 4. Discovery

The Brusers argue that the Probate Court erred by refusing to permit discovery to investigate the reasonableness of the trustee fee amount.

The Hawai'i Probate Rules do not confer an automatic right to discovery. See HPR Rule 20(d) cmt. To initiate discovery, a petitioner must first file an objection and have the subject of his or her objection be classified as a "contested matter" by the probate court. HPR Rule 19. Next, the probate court may, in its discretion and by written order, elect to retain the contested matter on the regular probate calendar or assign it to the civil trials calendar. HPR Rule 20(a). If the probate court retains the contested matter, the court may also, again in its discretion and "at the request of the parties, designate and order that any one or more of the Hawai'i Rules of Civil Procedure" be applicable to the contested matter. HPR Rule 20(d) (emphasis added).

The Brusers do not present citations to the record establishing, nor is it apparent from our review of the record, that the Brusers complied with the HPR procedures. Therefore, the Brusers' argument that the Probate Court erred by denying them discovery is without merit.

### 5. BOH's Attorneys' Fees and Costs

Separate from the AOAO's issues with the Attorneys' Fees and Costs Order and Judgment as discussed *supra*, the Brusers argue that the Probate Court erred because BOH's request for fees

and costs was (1) "riddled with block billing," and (2) failed to "submit any evidence that the claimed billing rates and charges were both customary and reasonable, it not being sufficient to show merely that the time was allegedly spent and that BOH believes by its self-serving Declaration that the charges were reasonable[.]"

The Brusers' opening brief fails to provide any citation to the alleged block billing in the BOH's requests for fees and costs. Therefore, we deem the argument waived and will not address this argument further. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7).[21]

With regard to the Brusers' second argument, HPR Rule 40(a) provides:

> **(a) Amount.** A fiduciary may pay fees for services of a fiduciary, attorney, or other professional that are not set by statute or court rule as long as the fees are just and reasonable in amount for the scope of services rendered. The reasonableness of the fees allowed shall be determined by all the facts and circumstances of the work performed including the complexity or ease of the matter, the experience, expertise, and uniqueness of services rendered, the amount of time spent on the matter, and the amount charged by others in similar situations.

HPR Rule 41 provides the procedure for the approval of such fees and costs:

> Whenever there is an objection to the fees of a fiduciary or attorney, or court approval of such fees is sought for any reason, the fiduciary or attorney whose fees are at issue <u>shall file an affidavit</u>, setting forth the amount and basis of calculation of the fees sought and any costs advanced which are to be reimbursed, at the same time as any petition seeking approval of such fees or any response to a petition objecting to such fees. The affidavit should specifically detail the charges for the services and costs rendered to the date of the affidavit and the anticipated charges and costs to complete the matter through preparation, processing, and service of the order.

(Emphasis added.)

---

[21]     HRAP Rule 28(b)(7) provides that an appellant's opening brief shall contain "[t]he argument, containing the contentions of the appellant on the points presented and the reasons therefor, with citations to the authorities, statutes and <u>parts of the record relied on</u>. . . . Points not argued may be deemed waived." (Emphasis added.)

At the September 11, 2014 hearing, the Probate Court noted that the trust was "unique[.]" In support of its request for fees and costs, BOH filed two affidavits detailing its counsels' hourly rates, hours expended, and types of services provided in this litigation.

The Supreme Court of Hawai'i has noted that circuit court judges know "as well as a legal expert what are reasonable attorney fees, and that the amount of attorney's fees is within the judicial discretion of the court, and in fixing that amount the trial court may proceed upon its own knowledge of the value of the solicitor's services." Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai'i 286, 306, 141 P.3d 459, 479 (2006) (quoting In re Thz Fo Farm, 37 Haw. 447, 453 (1947)).

Based on the foregoing, we find the Brusers' arguments unpersuasive.

## IV. Conclusion

For the foregoing reasons, we:

Affirm the "Second Order Granting in Part and Continuing in Part Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008 Through December 31, 2013" and corresponding "Judgment," as to the trustee's fee amount and vacate it to the extent it obligates the trustee's fee to be paid from the Beneficiaries' distributions for five years and remand to determine whether it is necessary to modify the Trust Agreement provision specifying the trustee's fee shall be paid by the Lessee.

Affirm the "Order Denying Interested Parties Michael David Bruser and Lynn Bruser, Trustees Under Revocable Living Trust Agreement Dated July 11, 1988, as Amended, Doing Business As Discovery Bay Center's Petition Under HPR Rule 36 for Relief From Order and Reconsideration of Interim Order Relating to Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts

Covering the Period from January 1, 2008, Through December 31, 2013," corresponding "Judgment," all entered on April 17, 2015 in the Probate Court;

Vacate the "Order Granting Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008, Through December 31, 2013 as to All Pending Issues" and corresponding "Judgment," both entered on July 13, 2015 in the probate court, and the "Order Denying Respondent Association of Apartment Owners of Discovery Bay's Petition for Reconsideration of the Court's April 30, 2015 Decision with respect to Modification of the June 6, 1974 Trust Agreement" and corresponding "Judgment," both entered on September 22, 2015 by the probate court; and

Vacate and remand the "Order Granting Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008, Through December 31, 2013 as to Last Pending Issue Regarding Attorneys' Fees and Costs" and accompanying "Judgment" both entered on August 13, 2015 in the circuit court, for further findings consistent with this opinion.

DATED:  Honolulu, Hawai'i, June 29, 2018.

On the briefs:

Andrew V. Beaman,
Nathaniel A. Higa, and
Adrienne S. Yoshihara,
(Chun Kerr),
for Petitioner-Appellant
Association of Apartment
Owners of Discovery Bay.

Presiding Judge

Associate Judge

Gary Victor Dubin and
Frederick J. Arensmeyer,
for Respondent-Appellant
Michael David Bruser and Lynn
Bruser, Trustees.

Associate Judge

Vincent A. Piekarski and
Jonathan C. Bolton,
(Goodsill Anderson Quinn &
Stifel),
for Petitioner-Appellee Bank
of Hawaii, as Trustee.


Robert Bruce Graham, Jr.,
Clara Park, and
Sarah M. Simmons,
(Ashford & Wriston),
for Respondents-Appellees
Susan Sheetz and Patricia
Sheetz Bow.


Douglas C. Smith and
Christopher J.I. Leong,
(Damon Key Leong Kupchak
Hastert),
for Respondent-Appellee
Kevin I. Yokoyama, as Trustee.


Corey Y.S. Park,
for Respondents-Appellees
Julie G. Henderson, as
Trustee.